UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| NANETTE STEIBEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00231-NCC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Nanette Steibel ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18), and Defendant has filed a brief in support of the Answer (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on October 1, 2013 (Tr. 130-47). Plaintiff was initially denied on November 15, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 76-85). After a hearing, by decision dated August 27, 2015, the ALJ found Plaintiff not disabled (Tr. 7-25). On August 9, 2016, the Appeals Council issued a decision denying Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 23, 2013 (Tr. 12). The ALJ found that the Plaintiff has the following severe impairments: lumbar degenerative disc disease and obesity but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-17).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a range of light work[1] except that she cannot climb ladders, ropes or scaffolds, but can occasionally climb stairs and ramps (Tr. 17). She can occasionally stoop, kneel, crouch and crawl (*Id.*). She cannot operate foot controls (*Id.*). She cannot engage in work that involves exposure to hazards, such as unprotected heights or moving and dangerous machinery (*Id.*). The ALJ found Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including injection molder, extrusion press operator, and assembler of electrical accessories outside the lighting industry (Tr. 21-22). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 22). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

---

[1] "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of

the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that that the ALJ erred in his RFC determination as it was not supported by "some" medical evidence, as required under the standards in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (Doc. 18 at 6). Specifically, Plaintiff argues that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Michael Fan, M.D., a pain specialist (*Id.* at 7).[2] Second, Plaintiff asserts that the ALJ failed to

---

[2] The Parties do not dispute that Dr. Fan is Plaintiff's treating physician (Doc. 18 at 5; Doc. 21 at 4) ).

5

properly consider Plaintiff's subjective complaints of pain (*Id.* at 11). Finally, Plaintiff argues that the hypothetical question posed to the vocational expert failed to capture the concrete consequences of Plaintiff's impairment (*Id.* at 12). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Credibility**

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Masterson*, 363 F.3d at 738. It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). As addressed above, when evaluating a claimant's credibility, the ALJ must consider the following factors:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

6

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

To the extent that the ALJ did not specifically cite *Polaski*, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004); *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 2000). Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). *See also Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004); *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's activities of daily living and found her level of activity inconsistent with her alleged limitations (Tr. 15). An ALJ may discount a claimant's subjective claims of extreme pain or limitations if such claims are inconsistent with the

7

claimant's daily activities. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Specifically, the ALJ noted that, at the time of the hearing Plaintiff was working part-time (Tr. 15). The ALJ inferred that, in light of her part-time work, Plaintiff "was able to dress appropriately, arrange transportation to and from work and perform her duties while on the job" (*Id.*). Further, as the ALJ indicated, Plaintiff reported in her Function Report that she was able to take care of her own personal needs, care for the dogs, prepare large meals occasionally and simple meals daily, clean the house, do laundry, mow, and do some other yard work (Tr. 15, 182-89). The ALJ, therefore, concluded that Plaintiff has mild limitation as to her activities of daily living (Tr. 15).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. *See Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (determining that the ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); *Buckner v. Astrue*, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in daily activities that were inconsistent with his allegations). *See also Ponders v. Colvin*, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills,

shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); *Roberson v. Astrue*, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends). Moreover, to the extent Plaintiff urges the Court to reweigh the evidence regarding her daily activities and draw its own conclusion in this regard, it is not the function of the Court to do so. *See Bates v. Chater*, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted). In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.

Second, the ALJ found Plaintiff's subjective complaints to be inconsistent with clinical and objective finding in the record (Tr. 19). *See* 20 CFR § 404.1529(c)(2) (the agency will consider "objective medical evidence" when evaluating symptoms); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). Specifically, in his thorough review of the evidence, the ALJ properly indicated that Plaintiff has a history of chronic low back pain and that, upon physical examination, physicians noted tenderness, spasm, a reduced lordosis curve,[3] and intermittent positive straight leg raising (Tr. 19, 45, 230, 234, 236, 239, 249, 260, 304, 399). However, physicians also found Plaintiff to be comfortable on examination and

---

[3] Lordosis is defined as the "anteroposterior curvature of the spine, generally lumbar with the convexity looking anteriorly." *Stedman's Medical Dictionary* 996 (26th ed. 1995). A reduced lordosis curve (also known as "flatback syndrome") occurs when there is a loss of lordosis, making the spine straight. *Flatback syndrome*, Cedars-Sinai, https://www.cedars-sinai.edu/Patients/Health-Conditions/Flatback-Syndrome.aspx (last visited Sept. 25, 2017). Persons with flatback syndrome often have difficulty standing up straight and may also have a sensation of falling forward, chronic pain in the back muscles, fatigue, and stooping. *Id.*

noted generally normal findings throughout including good flexion, good muscle strength and tone, and, prior to her ankle injuries, normal gait and station (Tr. 19, 232, 240, 248-49, 260, 267, 283 298-99, 304, 393). Similarly, as indicated by the ALJ, diagnostic tests failed to support Plaintiff's allegations of disabling physical impairments (Tr. 19). For example, an MRI from April 2013 indicated mild facet hypertrophy throughout with small disc bulges at L2-3 and L3-4, without stenosis (Tr. 251).

Third, the ALJ considered that Plaintiff "has not required aggressive medical treatment, frequent hospital confinement or surgical intervention" and that "[t]he little treatment that [Plaintiff] has received for her allegedly disability symptoms has been essentially routine and/or conservative in nature" (Tr. 19). For example, the ALJ noted that Plaintiff had been diagnosed with degenerative disc disease without any specific surgical problems (Tr. 19, 235-36, 261). Additionally, as also indicated by the ALJ, Plaintiff has not been prescribed pain modalities such as a back brace, a transcutaneous electrical nerve stimulator (TENS) unit or a spinal cord stimulator (Tr. 19). Further, the medical records do not indicate that Plaintiff requires an assistive device for walking (*Id.*). *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that she alleged").

Fourth, the ALJ noted that while Plaintiff received treatment for the allegedly disabling conditions, treatment has been generally successful in controlling those symptoms (Tr. 19). For example, while Plaintiff alleged that she has been unable to work due to disabling back pain with numbness in her legs, after medical branch blocks in May, June and July of 2013, Plaintiff

reported to her primary care provider, Dr. Jonathan Bird, M.D., that her chronic back pain was improving, that she was happy with her pain management treatment, and had experienced good relief up to that point in time (Tr. 18, 45-46, 240, 252, 254, 256). *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Fifth, the ALJ noted that, at the time of the hearing, Plaintiff was working part time (Tr. 18). Indeed, Plaintiff testified during the hearing that she was working part-time as a parking lot attendant during the St. Louis Cardinals' home games (Tr. 18, Tr. 37-38). Specifically, Plaintiff testified that during the summer she works for a friend who owns a parking lot sitting on a bench flagging cars and in exchange he will give her gas money or pay a bill for her (Tr. 37-38). Plaintiff also reported the same to several medical providers (Tr. 18, 258, 268, 276). Part-time work may be relevant to the evaluation of disability even if the work does not qualify as substantial gainful activity. *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). *See also Zenker v. Bowen*, 872 F.2d 268, 270 (8th Cir. 1989) (finding that a claimant could perform substantial gainful activity, in part based on the claimant's part-time work).

Fifth, the ALJ questioned Plaintiff's credibility regarding the severity of her symptoms based on Plaintiff's misuse of medications and failure to follow treatment advice (Tr. 18). Although Plaintiff testified that she had no substance abuse in her past, her statement, as noted by the ALJ, is contradicted by the record (*Id.*). For example, Plaintiff reported to her pain specialist that she bought some hydrocodone pills "off the streets" because she had run out of her

11

pain medication early (Tr. 18, 314). Her initial urine drug screen was positive for marijuana (Tr. 18, 314). Also despite the recommendation from a physician that she not drink any alcohol, she continued drinking; once admitting that she drinks 10 alcoholic drinks a week (Tr. 14, 277, 281, 285). *See Guilliams*, 393 F.3d at 802 (failure to follow a recommended course of treatment weighs against a claimant's credibility). Finally, as indicated by the ALJ, Plaintiff's pain specialist gave her a final warning regarding the violation of the pain management clinic's controlled substances therapy agreement (Tr. 18, 320). *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations.").

In conclusion, the Court finds that the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of her conditions not fully credible, and that the ALJ's analysis was carefully linked to the evidence of record. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.") (internal quotation marks and citation omitted). As such, the Court further finds that the ALJ's credibility determination is based on substantial evidence and is consistent with the Regulations and case law.

**B. Plaintiff's RFC**

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer*, 245 F.3d at 703. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her]

12

limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).

"Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence... must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

While Plaintiff asserts that the ALJ failed to support his residual functional capacity determination with "some" medical evidence as required under the standards in *Singh*, 222 F.3d 448, and *Lauer*, 245 F.3d 700, the Court finds the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed Plaintiff's credibility and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, activities of daily living, and other appropriate indicia of credibility. The ALJ additionally addressed the medical opinion evidence of record, affording the opinion of

Michael Fan, M.D. ("Dr. Fan"), Plaintiff's treating physician and a pain specialist, "limited weight" and the opinion of Cynthia Bleichroth, M.D. ("Dr. Bleichroth"), a state agency examiner, "significant weight" (Tr. 20).

In a Physical Residual Functional Capacity Questionnaire dated April 3, 2014, Dr. Fan indicated that because of Plaintiff's chronic pain syndrome and lumbar spine spondylosis, she suffers from constant severe low back pain that worsens with lifting or activity (Tr. 272). As a result of Plaintiff's impairments, Dr. Fan opined that Plaintiff can walk for a city block without rest or severe pain; can stand without needing to sit down or walk for one to two hours; can stand and walk for less than two hours; and would need to walk around every 30 minutes for about ten minutes at a time (Tr. 272-73). Dr. Fan also indicated that Plaintiff could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, and rarely lift and carry 20 pounds (Tr. 274). He further opined that Plaintiff could never climb ladders, only rarely stoop, crouch, and squat, and occasionally twist and climb stairs (Tr. 275). Dr. Fan also noted that Plaintiff would likely be absent from work about four days per month (*Id.*). Of note, Dr. Fan additionally indicated that while Plaintiff's impairments have lasted or can be expected to last at least twelve months, that Plaintiff is a malingerer (Tr. 272).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may

14

undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Fan. In affording the opinion of Dr. Fan "limited weight," the ALJ first found, noting that Dr. Fan frequently indicates that Plaintiff is disabled and should receive disability benefits in his treatment notes, that the ultimate issue of disability is properly left to the Commissioner (Tr. 20). *See, e.g*, Tr. 338, 344, 349, 353 ("Pt unable to work because of increasing pain. Pt has applied for disability, was denied and is now hiring a lawyer."). "A treating physician's opinion that a claimant is not able to return to work 'involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight.'" *Rosa v. Astrue*, 708 F. Supp. 2d 941, 949 (E.D. Mo. Apr. 28, 2010) (quoting *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).

Next, the ALJ found Dr. Fan's opinion to be "completely inconsistent with the preponderance of the records" (Tr. 20). Specifically, the ALJ indicated that the preponderance of objective clinical signs show that Plaintiff's back impairment does not interfere with mobility (Tr. 20). The ALJ also found that Dr. Fan's opinion was inconsistent with the objective findings, highlighting a MRI that shows only mild facet hypertrophy with small disc bulges, without stenosis (Tr. 20). While Plaintiff asserts that the ALJ failed to cite any authority for his conclusion that the objective findings of the MRI and the medical signs and symptoms referred to in the treatment notes were inconsistent with Dr. Fan's opinion (Doc. 18 at 8), the ALJ conducts a detailed analysis of these records elsewhere in the opinion (*See* Tr. 19). "An ALJ may

reject a treating physician's opinion if it is inconsistent with the record as a whole." *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011).

Finally, the ALJ considered the portion of Dr. Fan's opinion indicating that Plaintiff was a malingerer (Tr. 20). While Plaintiff's counsel indicated during the hearing that he would seek clarification regarding this statement, as the ALJ notes, no such clarification was provided to the Commissioner prior to the issuance of the ALJ's decision (Tr. 33). Regardless, the ALJ did not give this portion of Dr. Fan's opinion significant weight because, as addressed in more detail above, "there is more than sufficient evidence of record on which to base this decision" (Tr. 20).

After the ALJ issued his decision, Plaintiff submitted a second medical source statement from Dr. Fan dated September 17, 2015 (Tr. 415-19). The Appeals Council considered the opinion and declined review (Tr. 4). When, as is the case here, "'the Appeals Council has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.'" *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003) (internal quotation marks omitted). Upon review of the opinion, the Court finds that the ALJ's decision remains supported by substantial evidence. The second questionnaire is largely identical to the first except that Dr. Fan has marked "no" next to the question, "Is your patient a malingerer?" (Tr. 415). As addressed above, the ALJ did not give this portion of Dr. Fan's first opinion significant weight (Tr. 20). Further, this Dr. Fan's opinion regarding Plaintiff's motivation is inconsistent with the medical records which indicate that Plaintiff may not be entirely credible.

Next, the ALJ considered the opinion of non-examining state agency medical consultant Cynthia Bleichroth, M.D. ("Dr. Bleichroth") (Tr. 20). After reviewing the evidence of record, Dr. Bleichroth, issued a physical residual functional capacity assessment on November 14, 2013 (Tr. 66-68). In her assessment, Dr. Bleichroth opined that Plaintiff has the following exertional

16

limitations: she can occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for a total of two hours at a time; and would be limited in her ability to push/and or pull with her right side lower extremities (Tr. 66-67). Dr. Bleichroth further opined that Plaintiff has the following postural limitations: she can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, and kneel; and can never crouch or crawl (Tr. 67).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Bleichroth. The ALJ afforded the opinion "significant weight, but only to the extent that [it] is consistent with the residual functional capacity set out above" (Tr. 20). In doing so, the ALJ found the opinion to be inconsistent with the record as a whole only as to Dr. Bleichroth's opined limitations regarding sitting more than standing and/or walking as well as pushing and/or pulling with the right lower extremity (*Id.*). As a state agency medical consultant Dr. Bleichroth is a highly qualified expert who offered an opinion generally consistent with the record as a whole. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann*, 721 F3d at 951 (State agency psychologist's opinion supported the ALJ's finding that claimant could work despite his mental impairments); *Casey*, 503 F.3d at 694 (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). *See also cf. Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) (finding an ALJ may not draw upon his own inferences from medical reports when the only medical evidence in the record of plaintiff's ability to do work is favorable to him).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of

medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

### C. Vocational Expert

Finally, to the extent Plaintiff asserts that the ALJ failed to properly include all of Plaintiff's limitations in his hypothetical to the vocational expert, an ALJ is required to include only a claimant's credible limitations. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *Wildman*, 596 F.3d at 969 ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); *Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). As addressed in more detail above, the Court finds the ALJ's RFC determination to be supported by substantive evidence. Further, the hypothetical which the ALJ posed to the VE captured the concrete consequences of Plaintiff's limitations and included all of Plaintiff's impairments as supported by substantial evidence in the record (*See* Tr. 56-60). Because there was work which Plaintiff could perform, based on the testimony of the VE and his independent review of the DOT, the ALJ found Plaintiff was not disabled. *Martise*, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the

VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix*, 465 F.3d at 889). As such, the Court finds that the ALJ posed a proper hypothetical to the VE; that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform; and that the ALJ's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of September, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE